# Exhibit 10

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

THE NOVEMBER TEAM, INC.; ANAT GERSTEIN, INC., BERLINROSEN PUBLIC AFFAIRS, LTD.; RISA HELLER COMMUNICATIONS LLC; and MERCURY LLC,

Plaintiffs,

-against-

NEW YORK STATE JOINT COMMISSION ON PUBLIC ETHICS; and DANIEL J. HORWITZ, DAVID ARROYO, HON. JOSEPH COVELLO, MARVIN E. JACOB, SEYMOUR KNOX IV, HON. EILEEN KORETZ, GARY J. LAVINE, HON. MARY LOU RATH, DAVID A. RENZI, MICHAEL A. ROMEO, HON. RENEE R. ROTH, MICHAEL K. ROZEN, DAWN L. SMALLS, and GEORGE H. WEISMAN, in their official capacities as members of the New York State Joint Commission on Public Ethics,

Defendants.

No. 16 Civ. _____

**DECLARATION OF RENEE M. WILSON**

Renee M. Wilson declares under penalty of perjury, pursuant to 28 U.S.C. § 1746, as follows:

## Background

1. I am currently the President of the PR Council, a position I assumed in January 2016. The PR Council is the professional trade association for agencies practicing public relations within the world of marketing and communications.

2. The PR Council, established as the Council of Public Relations Firms in 1998, is the trade association representing America's leading public relations firms. The members of The PR Council are global, mid-size, regional, and specialty firms across every discipline and

practice area, and include CEOs, CFOs, HR leaders and executives. More than 100 of America's leading public relations firms are currently members of the Council.

3. In my current role as President of the PR Council, I am responsible for carrying out the mission of the PR Council, which is to strengthen the recognition and role of public relations firms in corporate strategy, business performance, and social education; to serve as an authoritative source of information and expert comment; as well as, to help set standards for the public relations industry.

4. Prior to my current employment with the PR Council, I was the Global Chief Client Officer for MSLGROUP. I was employed by MSLGROUP for approximately 12 years, and held various positions of increasing responsibility prior to becoming Global Chief Client Officer. MSLGROUP is Publicis Groupe's strategic communications and engagement company with over 100 offices in 26 countries. I have worked in the public relations field for over 25 years.

**<u>The PR Council</u>**

5. The PR Council's core principals and philosophical guidelines for the organization's activities are to promote excellence in the practice of public relations firms; enhance future success for member firms in a rapidly changing environment; share best practices in firm management; champion honesty, integrity, and transparency; and, expand and diversify the talent pool.

6. The PR Council provides guidelines to its members that include a Code of Ethics and Principles, which specifically addresses transparency and disclosure: "When we engage with journalists, bloggers or other organizations, we disclose who we represent. We respect the opinions of journalists and other spokespeople as their own."

7. Further, the PR Council requires members to sign annually the PR Council Statement of Principles, which includes the following language:

> *"Members of the PR Council are proud to play a vital role in the development and implementation of federal, state and local government programs. We recognize and accept this responsibility and act in accordance with the highest degree of ethical and financial conduct.*
> *We will not misrepresent our status or the nature of inquiries to public bodies or create false impressions in our relations with such bodies.*
> *We believe that the public is entitled to know the identity of our government clients. We encourage government agencies and their communications agency partners to publicly disclose all contractual relationships.*
> *We are conscientious stewards of taxpayer dollars. Working for federal, state and local governmental entities involves a unique responsibility as it is paid for by taxpayers' dollars and, like the rest of our work, must uphold the public trust at all times."*

8. I am not aware of any instances of the PR Council's members violating these ethics and principles with respect to being forthright and honest in their interactions with members of the press.

**New York State Joint Commission on Public Ethics**

9. The New York State Joint Commission on Public Ethics (the "Commission") is an entity under New York State law with the power to administer and enforce the provisions of the New York Lobbying Act, including the power to assess financial penalties against a person or entity found to be in violation of that Act. The Commission also issues advisory opinions as to the meaning of the Lobbying Act.

10. I am familiar with the Commission and its advisory opinions from my experience in the field of public relations. In my current role as President of the PR Council, I keep abreast of developments that impact its members, including the actions of the Commission.

11. On January 26, 2016 the Commission issued Advisory Opinion 16-01, which has the effect of expanding the definition of "lobbying" to reach communications on public issues

with members of the press. The newly expanded definition covers the activities of virtually every public relations firm in the State, and is of particular interest to the PR Council's members.

## The Public Relations Field

12. The field of "public relations" is a strategic communication process that builds mutually beneficial relationships between organizations and the public. "Public affairs" combines all the tools of public relations—media relations, advertising, digital communications, coalition building, and grassroots organization—to achieve a specific public policy objective.

13. The PR Council's members regularly interact with members of the press on behalf of their clients, including by providing information to reporters, and seeking to persuade reporters, editorial writers, and media outlets generally to cover issues of concern to their clients. This type of work is one of the core responsibilities of public relations professionals.

14. The PR Council's members often speak with editors and reporters anonymously for any number of reasons. Such private conversations are vital to raise and share important information and views with the press.

15. Public relations consultants and public affairs professionals are distinct from lobbyists, who seek to influence an elected official on a matter of public policy. Lobbyists often work directly with elected officials and their staffs to conceptualize, craft, and promote, or block, the passage of legislation at the local, state, or federal levels.

## Impact to PR Council Members

16. Advisory Opinion 16-01 purports to require disclosure of interactions between public relations consultants and members of the press, which would mean that thousands of individuals, including many employees of the members of the PR Council, who have nothing to do with traditional definitions of lobbying, would now be regulated.

17. Advisory Opinion 16-01 would effectively convert the entire public relations industry in New York State into "lobbyists" subject to Commission's disclosure and regulatory regime. All public relations consultants work "to advance the client's lobbying message." And virtually all public relations consultants "contact[] media outlet[s] in an attempt to get [them] to advance the client's message."

18. Public affairs professionals work closely with lobbyists to build public support for their client's position. It is often said that lobbyists work inside the building (a city hall, state capital, or US Capitol), while public affairs professionals work outside the building (in the media, online, and on "Main Street"), creating understanding and public support for a particular public policy decision.

19. In likening public relations consultants and public affairs professionals to lobbyists for purposes of registration and reporting, Advisory Opinion 16-01 inhibits the public discourse on critical issues and the free flow of information that is so integral to the democratic process.

20. If Advisory Opinion 16-01 takes effect, public relations firms that do not want to register as lobbyists will be deterred from communicating with the press on legislative issues, or will be forced to outsource this work to registered lobbyists. Moreover, public relations firms will need to create their own internal compliance system, which will hinder the way public relations firms do business. Alternatively, public relations firms may stop doing business in New York State.

21. The ambiguity in Advisory Opinion 16-01 has not been alleviated by the Commission's attempts to clarify its position. While it appears that the Commission's clarifications indicate that it does not intend to apply the Lobbying Act to the entire public

relations ecosystem, the Commission has thus been unable to address which core public relations activities would trigger New York's lobbying regulations.

22. As a result, the PR Council's members in New York State do not know whether and to what extent the Commission will apply the Lobbying Act to them, and will be effectively paralyzed.

23. The PR Council's members are understandably concerned about contacting editors, reporters, writers, and TV producers about issues of public concern and whether such contact requires compliance with an unnecessary and burdensome disclosure and regulatory scheme.

24. As a result of all the above, I believe the public will suffer. The public will be deprived of stories, articles, blogs, webcasts, and editorials informed by a vital give-and-take between the press and public relations consultants.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge.

Executed at New York, New York on this ___ day of March 2016:

Renee Wilson

Renee M. Wilson