# Exhibit 11

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

THE NOVEMBER TEAM, INC.; ANAT GERSTEIN, INC., BERLINROSEN PUBLIC AFFAIRS, LTD.; RISA HELLER COMMUNICATIONS LLC; and MERCURY LLC,

Plaintiffs,

-against-

NEW YORK STATE JOINT COMMISSION ON PUBLIC ETHICS; and DANIEL J. HORWITZ, DAVID ARROYO, HON. JOSEPH COVELLO, MARVIN E. JACOB, SEYMOUR KNOX IV, HON. EILEEN KORETZ, GARY J. LAVINE, HON. MARY LOU RATH, DAVID A. RENZI, MICHAEL A. ROMEO, HON. RENEE R. ROTH, MICHAEL K. ROZEN, DAWN L. SMALLS, and GEORGE H. WEISMAN, in their official capacities as members of the New York State Joint Commission on Public Ethics,

Defendants.

No. 16 Civ. _____

**DECLARATION OF**
**JOSEPH P. TRUNCALE**

Joseph P. Truncale declares under penalty of perjury, pursuant to 28 U.S.C. § 1746, as follows:

**Background**

1. I am currently employed as CEO of the Public Relations Society of America (PRSA), a position I assumed in January 2015. PRSA is the world's largest and foremost organization of public relations professionals with more than 22,000 public relations and communications professionals, in addition to more than 10,000 university and college students through the Public Relations Student Society of America.

2. In my current role as CEO of PRSA, I am responsible for leading PRSA in its mission to provide professional development, set standards of excellence, and uphold principles

of ethics for its members. PRSA also advocates for greater understanding and adoption of public relations services, and acts as one of the industry's leading voices on pivotal business and professional issues.

3. Prior to my current employment with PRSA, I was the President and CEO of the National Association for Printing Leadership (the "NAPL", now known as Epicomm) for 12 years. I was employed by NAPL for over 30 years in total, and held various positions of increasing responsibility prior to becoming President and CEO.

4. I hold a Ph.D. in media culture and communications from New York University and have taught as an adjunct professor in the Graphic Communications Program, which integrates marketing and public relations.

5. In my experience, there has been a blurring of lines between the fields of public relations and marketing. Many public relations firms and professionals are moving more into integrated marketing, and agencies and large corporations that have an active in-house public relations function are seeking greater measurement of public relations activities. The fields of public relations and marketing are closely related and the line between the two continues to erode.

**PRSA**

6. PRSA's professional values represent the core values of PRSA members and, more broadly, the public relations profession. The values provide the foundation for the PRSA Member Code of Ethics and set the industry standard for the professional practice of public relations. PRSA's Statement of Professional Values provide that PRSA members:

(a) serve the public interest by acting as responsible advocates and to provide a voice in the marketplace of ideas, facts, and viewpoints to aid informed public debate;

(b) adhere to the highest standards of accuracy and truth in advancing interests and in communicating with the public;

(c) acquire and responsibly use specialized knowledge and experience through continued professional development, research, and education, and to build mutual understanding, credibility, and relationships among a wide array of institutions and audiences;

(d) provide objective counsel;

(e) be faithful to clients, while honoring our obligation to serve the public interest; and,

(f) deal fairly with clients, employers, competitors, peers, vendors, the media, and the general public and respect all opinions and support the right of free expression.

7. PRSA's members are individuals who work in a variety of contexts, from public relations firms to major corporations to non-profit organizations, and across every discipline and practice area.

8. PRSA requests its members to sign the PRSA Member Code of Ethics Pledge, in which PRSA members pledge:

> *"To conduct myself professionally, with truth, accuracy, fairness, and responsibility to the public; To improve my individual competence and advance the knowledge and proficiency of the profession through continuing research and education; And to adhere to the articles of the Member Code of Ethics 2000 for the practice of public relations as adopted by the governing Assembly of the Public Relations Society of America."*

9. I am not aware of any instances of PRSA's members violating these ethics and principles with respect to being forthright and honest in their interactions with members of the press.

**The Practice and Discipline of Public Relations**

10. The formal discipline of what is now commonly referred to as "public relations" dates to the early 20th century. In the relatively brief period leading up to today, public relations has been defined in many different ways, the definition often evolving alongside public relations' changing roles and technological advances.

11. In 2011–12, PRSA led an international effort to modernize the definition of public relations. PRSA initiated a crowdsourcing campaign and public vote that produced the following definition: "Public relations is a strategic communication process that builds mutually beneficial relationships between organizations and their publics."

12. To build those mutually beneficial relationships, PRSA's members regularly interact with members of the press on behalf of their clients, including by providing information to reporters, editorial writers, and media outlets, often in an effort to persuade those groups to cover issues of concern to their clients. This type of work is one of the core responsibilities of public relations professionals.

13. PRSA's members often speak with editors and reporters anonymously for any number of reasons. Such private conversations are vital to raise and share important information and views with the press.

**New York State Joint Commission on Public Ethics**

14. I am familiar with the New York State Joint Commission on Public Ethics (the "Commission") and its advisory opinions from my experience in the field of public relations. In

my current role as CEO of PRSA, I keep abreast of developments that impact its members, including the actions of the Commission.

15. On January 26, 2016 the Commission issued Advisory Opinion 16-01, which has the effect of expanding the definition of "lobbying" to reach communications on public issues with members of the press. It requires public relations entities engaged in these core First Amendment activities to report their press communications to the Commission on pain of civil fines or criminal referral. In my opinion, the newly expanded definition covers the activities of many public relations professionals in the State, and is of particular interest to PRSA members.

**Impact to PRSA Members**

16. Advisory Opinion 16-01 purports to require disclosure of interactions between public relations consultants and members of the press, which would mean that thousands of individuals who have nothing to do with traditional definitions of lobbying would now be subject to regulation.

17. Advisory Opinion 16-01 would apply to many of PRSA's members.

18. As a result of the ambiguity in Advisory Opinion 16-01 and the Commission's comments, PRSA members in New York State do not know whether and to what extent the Commission will apply the Lobbying Act to them.

19. I believe that Advisory Opinion 16-01 has serious implications for PRSA members that have business dealings in New York, with the result being that such professionals and their clients will be deterred, chilled, or silenced in their communications with the press.

20. As a result of all the above, I believe the public will suffer. The public will be deprived of stories, articles, blogs, webcasts, and editorials informed by a vital give-and-take between the press and public relations consultants.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge.

Executed at New York, New York on this 4 day of March 2016:

Joseph P. Truncale