# Exhibit 12

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

THE NOVEMBER TEAM, INC.; ANAT GERSTEIN, INC., BERLINROSEN PUBLIC AFFAIRS, LTD.; RISA HELLER COMMUNICATIONS LLC; and MERCURY LLC,

Plaintiffs,

-against-

NEW YORK STATE JOINT COMMISSION ON PUBLIC ETHICS; and DANIEL J. HORWITZ, DAVID ARROYO, HON. JOSEPH COVELLO, MARVIN E. JACOB, SEYMOUR KNOX IV, HON. EILEEN KORETZ, GARY J. LAVINE, HON. MARY LOU RATH, DAVID A. RENZI, MICHAEL A. ROMEO, HON. RENEE R. ROTH, MICHAEL K. ROZEN, DAWN L. SMALLS, and GEORGE H. WEISMAN, in their official capacities as members of the New York State Joint Commission on Public Ethics,

Defendants.

No. 16 Civ. _____

**DECLARATION OF ROGER BOLTON**

Roger Bolton declares under penalty of perjury, pursuant to 28 U.S.C. § 1746, as follows:

**Background**

1. I am currently the President of the Arthur W. Page Society, a position I assumed in December 2011. The Arthur W. Page Society is the premier global membership organization for senior public relations and corporate communications executives who seek to enrich and strengthen their profession.

2. Including my current employment with the Page Society, I have worked in the public relations and communications fields for over 35 years with such companies as Aetna and

IBM, and with government agencies, including the U.S. Treasury and the U.S. Trade Representative.

3. Since its incorporation in December 1983, the Page Society has networked together senior communications executives representing a wide spectrum of industries who are interested in helping each other and perpetuating the highest level of professional standards and conduct. The Page Society's membership, numbering over 600, consists primarily of chief communications officers of Fortune 500 corporations and non-profit organizations, the chief executive officers of the world's largest public relations agencies, and leading academics from the nation's top business and communications schools who have distinguished themselves teaching corporate communications.

4. In my current role as President of the Page Society, I am responsible for carrying out the Page Society's mission, which is to strengthen the enterprise leadership role of the chief communications officer by embracing the highest professional standards, advancing the way communications is understood, practiced and taught, and providing a collegial and dynamic learning environment.

5. The Page Society is upheld by management concepts, known as the "Page Principles", which have been tested for more than half a century and have earned the support and respect of business leaders throughout the country, who practice them daily.

6. The Page Society is committed to the belief that public relations, as a strategic function of executive management, is central to the success of the corporation. The membership of the Page Society embraces individuals who epitomize the highest standards of public relations practice, which includes stakeholder engagement, as exemplified by the Page Principles.

7. The first of the Page Principles is: "***Tell the truth.*** Let the public know what's happening with honest and good intention; provide an ethically accurate picture of the enterprise's character, values, ideals and actions."

8. As an organization that promotes ethics and integrity in communications, the Page Society fully appreciates the appropriate need for transparency. It is a fundamental element of earning the public's trust.

**<u>The Public Relations Field</u>**

9. Public relations, as a field, had its foundation laid by the Page Society's namesake, Arthur W. Page. Page was the first public relations executive to have served in a corporate strategic management role.

10. Page's understanding of, and vision for, public relations continues to this day. When asked in 1946 about the public relations job that business as a whole should do, Page responded:

> *"This task of business in fitting itself to the pattern of public desires is public relations. It is, in effect, adapting big business to a democracy. The public relations job of this, as of other businesses, is to earn a good reputation with the public, to establish itself in the public mind as an institution of character and one which functions in the public interest.*
>
> *As for advertising and publicity, it is true they are important parts of public relations, although here, as in most human affairs, what you do is more important than what you say. What you say, the manner and extent to which you inform the public about the conduct of your business is a vital matter, however. Purpose of this information is to tell the public about the policies and practices of a company so as to demonstrate how it is fulfilling its contract with the public. The theory is that the greater the public knowledge of a business the greater the public's understanding of the business and the greater the use of its goods and services."*

11. In fulfilling the role outlined by Page, Page Society members and their staffs regularly interact with members of the press on behalf of their clients, including by providing information to reporters, and constructively engaging reporters, editorial writers, and media

outlets generally to understand issues of concern to their clients. This type of work is one of the core responsibilities of Page Society members and their staffs.

**New York State Joint Commission on Public Ethics**

12. I am familiar with the New York State Joint Commission on Public Ethics (the "Commission"), which has the authority to administer the New York Lobbying Act. The Commission also issues advisory opinions as to the meaning of the Lobbying Act.

13. On January 26, 2016 the Commission issued Advisory Opinion 16-01, which has the effect of expanding the definition of "lobbying" to reach communications on public issues with members of the press. The newly expanded definition impacts the activities of corporate chief communications officers and CEOs of public relations firms, and is of particular interest to the Page Society's members.

**Impact to Page Society Members**

14. Advisory Opinion 16-01 purports to require disclosure of interactions between public relations consultants—including corporate executives—and members of the press, which would mean that thousands of individuals, including many members of the Page Society and members of their staffs, who have nothing to do with traditional definitions of lobbying, would now be regulated.

15. Virtually all public relations consultants "contact[] media outlet[s] in an attempt to get [them] to advance the client's message," as this language is used in Advisory Opinion 16-01. In addition, public relations consultants regularly work "to advance the client's message." Advisory Opinion 16-01 would effectively convert significant portions of public relations industry in New York State into "lobbyists" subject to the Commission's disclosure and regulatory requirement.

16. One of the most important mandates of a chief communications officer is to be the chief minder of trust and reputation, which inherently includes corporate ethics and character. Part of fulfilling that mandate is to be able to advocate effectively for stakeholder interests, and on stakeholders' behalf, which could be considerably impaired by Advisory Opinion 16-01.

17. If Advisory Opinion 16-01 remains in effect, corporate officers that do not want to—or, because of corporate by-laws or mandates, may not be able to—register as lobbyists will be deterred from freely communicating with the press on legislative issues, which could curtail the ability of those communicators to engage with the media on issues that matter to their clients, enterprises, and the general public.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge.

Executed at New Canaan, Connecticut on this 7th day of March 2016:

Roger Bolton

Roger Bolton