UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------X
                                      :

THE NOVEMBER TEAM, INC., et al.,        :

                          Plaintiffs,  :

                                          :

           -against-               :

                                          :

NEW YORK STATE JOINT COMMISSION    :
ON PUBLIC ETHICS, et al.,             :

                         Defendants.  :

                                          :

------------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: _1/11/2017_

16 Civ. 1739 (LGS)

**OPINION AND ORDER**

LORNA G. SCHOFIELD, District Judge:

    Plaintiffs The November Team, Inc.; Anat Gerstein, Inc.; BerlinRosen Public Affairs, Ltd.; Risa Heller Communications LLC and Mercury LLC (collectively, "Plaintiffs") move for a temporary restraining order and preliminary injunction preventing Defendant New York State Joint Commission on Public Ethics ("JCOPE") from enforcing JCOPE Advisory Opinion 16-01 (the "Advisory Opinion" or in citations, "Adv. Op.").[1]  JCOPE opposes Plaintiffs' motion and cross-moves to dismiss the case.  In the alternative, JCOPE moves that this Court abstain from deciding Plaintiffs' motion until New York state courts have had an opportunity to interpret the Advisory Opinion.  For the following reasons, the Court finds that abstention is appropriate and denies both Plaintiffs' motion for injunctive relief and Defendants' cross-motion to dismiss.

I.    **BACKGROUND**

    The New York Lobbying Act (the "Act") aims to "preserve and maintain the integrity of [New York's] governmental decision-making process" by requiring the disclosure of the "identity, expenditures and activities of persons and organizations retained, employed or

---

[1]  The Advisory Opinion can be found at http://www.jcope.ny.gov/advice/jcope/2016/AO%2016-01%20FINAL.pdf

designated to influence" state decision-making.  N.Y. Legis. Law § 1-a.  Lobbyists earning or spending more than $5,000 in a year must file a statement of registration that identifies the lobbyist, their clients and information regarding the issues and intended recipients of the lobbying activity, along with regular reports on their lobbying activity.  N.Y. Legis. Law §§ 1-e, 1-h.  Among other things, these regular reports must also list "the compensation paid or owed to the lobbyist, and any expenses expended, received or incurred by the lobbyist for the purpose of lobbying."  *Id.* § 1-h(b)(5)(i).  For expenses over $75, the report must provide details regarding the amount spent, to whom it was paid and the purpose of the expenditure, along with the name of any person on whose behalf more than $75 is spent.  *Id.* § 1-h(b)(5)(ii).

A lobbyist, public corporation or client who "knowingly and willfully" violates the Act is subject to criminal and civil penalties.  *Id.* § 1-o.  First-time offenders are granted a 15-day grace period in which to file a missing statement of registration or report before a fine or penalty is assessed.  *Id.* § 1-o(c)(iii).

The Act is administered and enforced by JCOPE, a fourteen-member bipartisan commission appointed by various state officials.  *See* N.Y. Exec. Law § 94; N.Y. Legis. Law § 1-d.  On January 26, 2016, JCOPE issued the Advisory Opinion, which aims to clarify when the Act applies to consultants and when grassroots advocacy constitutes reportable lobbying activity.  Adv. Op. at 1-2.

The Act regulates both direct lobbying, which involves direct contact with a public official, and grassroots lobbying, which seeks to influence a public official indirectly through the intermediary of the public.  *See* N.Y. Legis. Law § 1-c(c); N.Y. State JCOPE, *Frequently Asked Questions, Lobbying Activities – Consultants Engaging in Grassroots Lobbying* ("Grassroots Lobbying FAQ"); N.Y. State JCOPE, *Frequently Asked Questions, Lobbying Activities –*

*Consultants Engaging in Direct Lobbying* ("Direct Lobbying FAQ").[2]  The Advisory Opinion

seeks to clarify, among other things, when a consultant's assistance with grassroots advocacy

becomes reportable lobbying.  The Advisory Opinion begins with a conclusion section and then

continues with a discussion.

In its conclusion section, the Advisory Opinion states that a grassroots communication

constitutes lobbying if it (1) "[r]eferences, suggests or otherwise implicates an activity" covered

by the definition of lobbying in the Act, (2) "[t]akes a clear position on the issue in question" and

(3) "[i]s an attempt to influence a public official through a call to action, *i.e.*, solicits or exhorts

the public . . . to contact (a) public official(s)."  Adv. Op. at 2.  The conclusion section also notes

that a "consultant's activity on a grassroots campaign can be considered reportable lobbying if

the consultant controlled the delivery and had input into the content of the message."  *Id*.

Control of the delivery "involves participation in the actual delivery of the message."  *Id*.  Input

on the content of a message occurs when the consultant "participat[es] in the formation of the

message."  *Id*.

In its discussion section, the Advisory Opinion clarifies that a consultant who "speaks to a

group to advance [a] client's lobbying message" or who "contacts a media outlet in an attempt to

get [the outlet] to advance the client's message in an editorial" would be delivering a message for

purposes of the Act.  *Id*. at 8.

After issuing the Advisory Opinion, JCOPE published the Grassroots Lobbying FAQ in

order to clarify the application of the Advisory Opinion.  *See* Grassroots Lobbying FAQ at 1-2.

---

[2] The Grassroots Lobbying FAQ can be found at
http://www.jcope.ny.gov/advice/jcope/2016/FAQsLobbying%20Advisory16-
01_CONSULTANTS_GRASSROOTS.pdf.  The Direct Lobbying FAQ can be found at
http://www.jcope.ny.gov/advice/proposed%20regs/FAQsLobbying%20Advisory16-
01_DIRECT.pdf.

The Grassroots Lobbying FAQ provides additional examples of when JCOPE considers a consultant to control the delivery of a client's position, including "[a]ppear[ing] on television to support the client's position with respect to a government action" and "encouraging an editorial board to support a position on a specific government action favorable to a client."  *Id.*

On August 24, 2016, Governor Andrew Cuomo signed a bill amending the Act to exempt certain communications with the press from the Act's definition of "lobbying."  *See* 2016 Sess. Law News of N.Y. c. 286, pt. I § 1, eff. Aug. 24, 2016, as codified at N.Y. Legis. Law § 1-c(c)(B)(ii).  Specifically, the Act does not cover "[c]ommunications with a professional journalist, or newscaster, including an editorial board or editorial writer of a newspaper, magazine, news agency, press association or wire service" if those communications "relate to news."  *Id.*  For purposes of the Act, a "newspaper" or "magazine" must have regular, paid circulation for at least one year.  N.Y. Legis. Law § 1-c(c)(B)(ii); N.Y. Civ. Rights Law § 79-h(a).  "News" means any "written, oral, pictorial, photographic, or electronically recorded information or communication concerning local, national or worldwide events or other matters of public concern or public interest or affecting the public welfare."  N.Y. Legis. Law § 1-c(c)(B)(ii); N.Y. Civ. Rights Law § 79-h(a)(8).

Plaintiffs are public relations firms.  They claim that the Advisory Opinion unlawfully subjects them to a regime designed for "true lobbyists, when all that they are doing is speaking to the press about public issues," thereby chilling their communications in violation of the First and Fourteenth Amendments.  The Complaint seeks a declaratory judgment to that effect and a permanent injunction enjoining enforcement of Section III of the Advisory Opinion, which addresses grassroots lobbying.

On April 1, 2016, the parties stipulated that, during the pendency of Plaintiffs' preliminary injunction motion and any subsequent appeal, JCOPE would stay any enforcement action or registration requirements for any of Plaintiffs' activities that do not constitute (1) direct communication between a Plaintiff and a public official or (2) an explicit exhortation to any member of the public to contact directly a public official.

## II.   DISCUSSION

In support of their claim that the Advisory Opinion violates the U.S. Constitution, Plaintiffs argue, among other things, that the Advisory Opinion is overbroad and unconstitutionally expands the definition of lobbying under the Act to activities that go beyond direct contact with public officials.  Because Plaintiffs' arguments rely upon a contested interpretation of an ambiguous state regulation that no state court has ever construed, abstention is appropriate under *Railroad Commission of Texas v. Pullman Co.* ("*Pullman*"), 312 U.S. 496 (1941).[3]

The Second Circuit recognizes that *Pullman* abstention may be appropriate when: "(1) an unclear state statute is at issue; (2) resolution of the federal constitutional issue depends on the interpretation of the state law; and (3) the law is susceptible to an interpretation by a state court that would avoid or modify the federal constitutional issue."  *Vt. Right. to Life Comm., Inc. v. Sorrell*, 221 F.3d 376, 385 (2d Cir. 2000) (internal quotation marks omitted).  *See also, e.g.*, *Handberry v. Thompson*, 446 F.3d 335, 355-56 (2d Cir. 2006) (applying test to state regulation).  "*Pullman* abstention allows federal courts to avoid both (a) premature decisions on questions of federal constitutional law, and (b) erroneous rulings with respect to state law."  *Expressions Hair*

---

[3] While the Supreme Court has indicated that certification is preferable to *Pullman* abstention, *see Arizonans for Official English v. Arizona*, 520 U.S. 43, 76 (1997), federal district courts may not certify questions to the New York Court of Appeals.  Pursuant to New York's certification statute, only "the Supreme Court of the United States, any United States Court of Appeals, or a court of last resort of any other state" may certify questions to the Court of Appeals.  N.Y. Comp. Codes R. & Regs. tit. 22, § 500.27(a).

*Design v. Schneiderman*, 808 F.3d 118, 137 (2d Cir. 2015) (internal quotation marks and citation omitted).  All three prongs of the Second Circuit's test are satisfied here.

First, the Advisory Opinion is an unclear state regulation that is subject to multiple, contradictory interpretations.  The Advisory Opinion states that a grassroots communication by a consultant constitutes lobbying where it (1) "[r]eferences, suggests or otherwise implicates an activity covered by [the Act]," (2) "[t]akes a clear position on the issue in question" and (3) "[i]s an attempt to influence a public official through a call to action, *i.e.*, solicits or exhorts the public . . . to contact (a) public official(s)."  Adv. Op. at 2.

However, the Advisory Opinion does not define what it means to "reference, suggest or otherwise implicate lobbying activity."  Depending on the definition of that phrase, the number and types of activities covered by the Advisory Opinion could be dramatically different.  While the Act defines lobbying as an attempt to influence the "passage or defeat" of legislation, among other similar acts, N.Y. Legis. Law § 1-c(c ), "referenc[ing], suggest[ing] or otherwise implicat[ing] lobbying activity" could mean something much broader.  If a consultant helped organize a campaign to inform legislators of their constituent's views on an issue that is not the subject of pending legislation, but which later could be, the Advisory Opinion might cover that activity as suggesting or implicating lobbying activity, while the Act's definition of lobbying would not cover it.

The Advisory Opinion is also internally inconsistent.  Its conclusion section states that a call to action is necessary for a grassroots communication to fall under the Act, and defines a call to action as soliciting or exhorting the public to contact public officials.  Adv. Op. at 4.  In contrast, both the Advisory Opinion's discussion section and the Grassroots Lobbying FAQ imply that a consultant could be subject to the Act even if the relevant communication does not

include a call to action.  According to the Advisory Opinion, consultants who both deliver a message and control its content are engaging in grassroots lobbying.  The discussion section and Grassroots Lobbying FAQ both provide examples of delivering a message that do not include a call to action.  The discussion section notes that a consultant who "speaks to a group to advance [a] client's lobbying message" is delivering a message.  *Id*. at 8.  The Grassroots Lobbying FAQ states that, where a consultant appears on television to support a client's position on a government action, that consultant is also delivering a message.  Grassroots Lobbying FAQ at 1-2.  Because the Advisory Opinion states that a consultant has engaged in lobbying when the consultant delivers a message and controls its content, it is possible to read the Advisory Opinion as both expressly requiring and not requiring a call to action as part of the test for determining whether an activity constitutes reportable lobbying.

In addition, the Advisory Opinion is ambiguous in light of the August 2016 amendment to the Act.  That amendment exempts press communications from reportable lobbying where a putative lobbyist is speaking to a professional journalist about news.  N.Y. Legis. Law § 1-c(c)(B)(ii).  Prior to the amendment, the Advisory Opinion included as reportable lobbying urging a newspaper to publish an editorial that included a call to action.  Following the amendment, it is unclear whether an editorial that includes both a discussion of news and a call to action is within the definition of lobbying, or whether communications with the press must be solely related to current events with no additional agenda to be exempt.  These ambiguities create issues of first impression that are best resolved by a state court.  *See Expressions*, 808 F.3d at 138 (state court should be afforded first opportunity to adopt least problematic interpretation of a state statute).

Regarding the second factor relevant to *Pullman* abstention, resolution of Plaintiffs' federal constitutional claims depends on the interpretation of the Advisory Opinion.  As explained above, the scope of the Advisory Opinion is unclear.  In order to determine whether and how the Advisory Opinion affects Plaintiffs' federal constitutional rights, the Court needs to understand what the Advisory Opinion regulates.  The proper construction of the Advisory Opinion is thus critical to any interpretation of its constitutionality.  *See, e.g.*, *Zuffa, LLC v. Schneiderman*, 15 Civ. 7624, 2016 WL 311298, at *6 (S.D.N.Y. Jan. 26, 2016) (second prong of *Pullman* test satisfied where constitutional challenge depends on interpretation of state law); *Weiser v. Koch*, 632 F. Supp. 1369, 1382-83 (S.D.N.Y. 1986) (second prong satisfied where different interpretations of New York state law would lead to different constitutional outcomes).

As for the third *Pullman* factor, the regulation is subject to multiple interpretations by a New York state court that would avoid or modify Plaintiffs' federal constitutional claims.  A New York state court could find that the Advisory Opinion is not a permissible interpretation of the Act because the Act applies to individuals and organizations who engage in lobbying activities, rather than individuals who "reference, suggest or implicate" lobbying activities.  N.Y. Legis. Law § 1-c(a) (definition of "lobbyist"), 1-c(c) (definition of "lobbying" and "lobbying activities.").  Such a determination could moot Plaintiffs' federal constitutional claims.  A New York state court could also interpret the Advisory Opinion to clarify that consultants are subject to the Act only when they engage in explicit entreaties to the public to contact directly a public official, which would substantially narrow Plaintiffs' claims.  *See, e.g.*, *Zuffa*, 2016 WL 311298, at *6 (third prong of *Pullman* test satisfied where statute is "susceptible to interpretations that would resolve the statutory uncertainty and eliminate the federal constitutional issue").

Although a court may invoke *Pullman* abstention when the three conditions listed above are met, it is not required to do so. Abstention is not appropriate where "important federal rights ... outweigh the interests underlying the *Pullman* doctrine." *Hartford Courant Co. v. Pellegrino*, 380 F.3d 83, 100 (2d Cir. 2004). The Second Circuit advises "particular caution" when abstaining in a First Amendment case, in large part because delay could "work to inhibit exercise of the First Amendment freedoms injured by the [regulation]." *Vt. Right. to Life Comm.*, 221 F.3d at 385.

In exercising that caution, the Court finds that abstention is appropriate. All three prongs of the Second Circuit's test for *Pullman* abstention apply to this case. In addition, the Second Circuit recently applied *Pullman* abstention in a First Amendment case, noting that "[i]f a state statute is susceptible of multiple interpretations, one of which might render it overbroad and another of which would not, *Pullman*'s logic suggests that the state courts – if they have not definitively construed the statute already – should be afforded the opportunity to adopt the narrower, less problematic interpretation." *Expressions*, 808 F.3d at 138. That principle applies here. Lastly, Plaintiffs' First Amendment rights will not be harmed while awaiting state court clarification in light of the parties' stipulation, which prevents JCOPE from enforcing the Advisory Opinion against Plaintiffs during the pendency of their motion and any subsequent appeals.

In sum, *Pullman* abstention is appropriate in this case to avoid the "friction-generating error that can result when a federal court endeavors to construe a novel state [a]ct not yet reviewed by the [s]tate's highest court," *Expressions*, 808 F.3d at 137 (internal quotation marks omitted), and because a state court determination of the meaning of the Advisory Opinion will likely resolve or modify the federal constitutional issue.

9

### III.   CONCLUSION

For the foregoing reasons, the Court abstains in this case, but retains jurisdiction pending a determination by a state court as to the meaning of the challenged state regulation.  Plaintiff's motion for injunctive relief and Defendant's cross-motion to dismiss are DENIED without prejudice to renewal.  Defendants' time to answer the Complaint is adjourned *sine die*, and the case is stayed.  The Clerk of Court is respectfully directed to close the motion at Docket No. 29.

Dated: January 11, 2017
     New York, New York

LORNA G. SCHOFIELD
UNITED STATES DISTRICT JUDGE